UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| CHICKEN MART, INC. | * | CIVIL ACTION |
| VERSUS | * | NO. 23-6661 |
| INDEPENDENT SPECIALTY INSURANCE COMPANY ET AL | * | SECTION L |

**ORDER & REASONS**

Before the Court is Defendants Certain Underwriters at Lloyd's ("Lloyd's") and Independent Specialty Insurance Company's ("ISIC") Motion to Compel Arbitration. R. Doc. 8. Plaintiff Chicken Mart, Inc. ("Chicken Mart") opposes the motion. R. Doc. 11. Defendants filed a reply. R. Doc. 13. Considering the briefing and the applicable law, the Court rules as follows.

## I.    BACKGROUND

This case arises from alleged damage to Chicken Mart's business property ("Covered Property") during Hurricane Ida, which was insured at the time by Defendants ISIC and Lloyd's. R. Doc. 1-2 at 2. Chicken Mart argues that Defendants have not tendered sufficient insurance proceeds following the storm, including compensation for both damage to the Covered Property and other personal business property. *Id.* Defendants removed the action from the Civil District Court for the Parish of Orleans to this Court pursuant to 28 U.S.C. § 1331. R. Doc. 1 at 9-10.

Chicken Mart further alleges that it timely notified Defendants of the damage, took reasonable measures to mitigate its losses, and Defendants performed an initial inspection of the Covered Property. R. Doc. 1-2 at 3. Chicken Mart alleges two causes of action: (1) breach of insurance contract and violation of La. R.S. 22:1892 and 22:1973.

First, Chicken Mart argues that Defendants breached their insurance contracts with Plaintiff by failing to tender sufficient proceeds. *Id.* at 5. Chicken Mart states that it has, and will

continue to, suffer damages due to Defendants' breaches. *Id.* Second, Chicken Mart alleges that Defendants have violated Louisiana's bad faith statutes pertaining to insurers by failing to timely tender insurance proceeds or make a settlement offer within the relevant statutory time frames. *Id.* at 6. Chicken Mart states that Defendants' violation of these statutes entitles it to additional statutory damages. *Id.* at 7. In response, Defendants filed the present motion. R. Doc. 8.

## II.    PRESENT MOTION

In its motion, Defendants move the Court to compel arbitration and grant a stay of the proceedings pursuant to a clause ("the Arbitration Agreement") found in the insurance policy. *Id.* Relevant portions of the Arbitration Agreement provide:

> All matters in dispute between you and us (referred to in this policy as "the parties") in relation to this insurance, including this policy's formation and validity, and whether arising during or after the period of this insurance, shall be referred to an Arbitration Tribunal . . . .

R. Doc. 8-1. at 4. Defendants argue that Chicken Mart's claims fall squarely within the Arbitration Agreement. *Id.* at 5. Additionally, the defendants note that the Arbitration Agreement is enforceable under both the New York Convention and the Federal Arbitration Act, and therefore this Court should compel arbitration. *Id.* at 6.

In opposition, Chicken Mart argues that it has separate insurance contracts with each Defendant, and therefore this Court should analyze the policies separately. R. Doc. 9 at 4. Because it claims that the insurance policies are separate from one another, Chicken Mart contends that only the foreign insurers have an enforceable arbitration agreement under the Convention on the Recognition and Enforcement of Arbitral Awards ("Convention"), which requires the presence of at least one foreign party. *Id.* at 4. Additionally, Chicken Mart avers that equitable estoppel does not require it to arbitrate its claims against the remaining domestic Defendant, ISIC. *Id.* at 6-7.

In reply, Defendants argue that arbitration is required under the Convention as to all insurers in this case because the policies were all created through Lloyd's, a foreign insurance syndicate, and courts have uniformly enforced arbitration agreements entered into by members of Lloyd's. R. Doc. 11 at 2. The insurers also allege that equitable estoppel should prevent Chicken Mart from circumnavigating the Arbitration Agreement when alleging interdependent claims. *Id.* at 4-5. Finally, Defendants contend that Chapter 1 of the FAA provides additional grounds for ISIC to enforce the Arbitration Agreement, and Louisiana law is no barrier. *Id.* at 8-10.

### III.    APPLICABLE LAW

Louisiana Revised Statute §22:868 provides that Louisiana law generally disfavors arbitration clauses in insurance contracts. In relevant part, it provides that "[n]o insurance contract delivered or issued for delivery in this state and covering subjects located, resident, or to be performed in this state… shall contain any condition, stipulation, or agreement… [d]epriving the courts of this state the jurisdiction or venue of action against the insurer." La. Stat. Ann. §22:868. Since Louisiana law would normally prohibit enforcement of the arbitration clause, Defendants must rely on a preemptory law for this motion to be granted. This law can be found in the treaty known as the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"). Where applicable, the Convention supersedes state law. *See McDonnel Grp., L.L.C. v. Great Lakes Ins. SE, UK Branch,* 923 F.3d 427 (5th Cir. 2019).

Implemented by Congress in 9 U.S.C. § § 201 *et seq.*, the Convention requires courts to conduct a "very limited inquiry" and enforce arbitration agreements if four criteria are met. *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 339 (5th Cir. 2004). Courts are to evaluate whether (1) there is a written agreement to arbitrate the matter; (2) the agreement provides for arbitration in a Convention signatory nation; (3) the agreement arises out of a commercial legal

relationship; and (4) a party to the agreement is not an American citizen. *Id.* (citing *Sedco, Inc. v. Petroleos Mexicanos Mexican Nat' l Oil Co.*, 767 F.2d 1140, 1144-45 (5th Cir. 1985)); 9 U.S.C. § 202. Federal policy and precedent emphasize a strong presumption in favor of the enforcement of arbitration clauses. *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297 (5th Cir. 2004) ("[T]here is a strong presumption in favor of arbitration and a party seeking to invalidate an arbitration agreement bears the burden of establishing its invalidity."). This policy is applied with "special force" on arbitrations under the Convention. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 638-40 (1985).

## IV.   ANALYSIS

The first issue is whether the insurance agreements should be considered separate contracts for the purpose of the Convention. In *Port Cargo Service, LLC v. Certain Underwriters at Lloyd's*, No. 18-6192, 2018 WL 4042874, at *3 (E.D. La. Aug. 24, 2018), the court, considering contract language that explicitly stated the policies were separate, held that the insured had separate insurance agreements with each of the insurers. Applying these same principles to a similar policy, the court in *City of Kenner v. Certain Underwriters at Lloyd's, London*, No. 21-2064, 2022 WL 307295, at *2 (E.D. La. Feb. 2, 2022) ("*City of Kenner I*"), held that the arbitration clause in the overarching policy document should be read as between the insured and each insurer— separately—such that only the foreign insurers could avail themselves of the arbitration clause pursuant to the Convention. *See City of Kenner v. Certain Underwriters at Lloyd's London*, 22-2167, 2022 WL 16961130, at *3 (E.D. La. Nov. 16, 2022) ("City of Kenner II") (holding as to an account policy identical to the one in *City of Kenner I* "that each individual policy that comprised the account policy was its own contract between plaintiff and the respective defendant").

Defendants argue that the Arbitration Agreement was issued in a single Policy, which was

subscribed to by all of the insurers. *Id.* However, many Louisiana courts have refused to find this persuasive in similar cases. *See, e.g.*, *City of Kenner I*, 2022 WL 307295, at *2 (finding unconvincing the fact that an arbitration clause was part of an overarching policy document). Although in some cases, the language of the insurance policy directly states that the contracts were to be construed as separate agreements, here, the Policy only notes that it may be construed separately "where circumstances so require." *See Port Cargo Service, LLC*, 2018 WL 4042874, at *3; R. Doc. 11 at 3. However, the Policy need not be explicit; other courts in this jurisdiction have found insurance contracts to be separate even without clear textual indication. In *City of Kenner I*, the court held that the insurance policies were separate agreements though the governing contract was "far from clear as to whether it is sole or separate." 2022 WL 307295, at *2.

Therefore, this Court will follow the clear example set by other courts in this district and hold that the Policy contained separate individual insurance contracts. As such, the Convention mandates arbitration as to the foreign Defendants because all four *Freudensprung* criteria are met. 379 F.3d at 339. First, there is a written agreement to arbitration in Section H of the Policy. R. Doc. 1-3 at 37-38. Second, the arbitration clause requires that arbitration take place in a signatory nation, the United States. *Id.* Third, the agreement stems from a commercial legal relationship as it is found within an insurance policy issued to a business. *Id.*; *see also 3155 Dauphine LLC v. Indep. Specialty Ins. Co.*, No. 23-2213, 2012 WL 6293818, *1, *5 (E.D. La. Sept. 26, 2023) ("[T]he arbitration agreement arises from a commercial legal relationship because it is contained in an insurance policy issued to a business."). Fourth, at least one defendant is a foreign citizen. R. Doc. 8-1 at 3. Accordingly, the Court will stay the current litigation as it relates to the foreign Defendants pending the outcome of arbitration.

The second issue is whether Chicken Mart should be estopped from arbitrating with only

the foreign Defendants. The Fifth Circuit has held that "equitable estoppel is warranted when [a] signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both nonsignator[ies] and one or more of the signatories to the contract." *Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524, 527 (5th Cir. 2000) (quotation and emphasis omitted). "Otherwise the arbitration proceedings between the two signatories would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted." *Id.* (quotation and emphasis omitted). Indeed, the Supreme Court has endorsed the application of estoppel doctrines to the Convention. *GE Energy Power Conv. Fr. SAS, Corp. v. Outokumpu Stainless USA, LLC*, 140 S. Ct. 1637, 1645 (2020) ("nothing in the text of the Convention could be read to otherwise prohibit the application of domestic equitable estoppel doctrines" that permit the enforcement of arbitration agreements by nonsignatories).

In *City of Kenner I*, the court held that equitable estoppel prevented the plaintiff from alleging concerted misconduct on the part of the defendants but then selectively proceeding with arbitration with only the foreign defendants. 2022 WL 307295, at *3. Courts in this jurisdiction have recognized that "[a]rbitrating claims against [one defendant] while litigating claims against [others] could yield inconsistent results, waste time and resources, and thwart federal policy favoring arbitration." *Holts v. TNT Cable Contractors, Inc.*, No. 19-13546, 2020 WL 1046337, at *4 (E.D. La. March 4, 2020). Because Chicken Mart is alleging intertwined conduct on the part of all Defendants, this Court will also stay the current litigation and compel arbitration as between Plaintiff and the domestic Defendants.

## V.   CONCLUSION

Accordingly, Defendants' Motion to Compel Arbitration, R. Doc. 8, is **GRANTED**. Plaintiff's claims against Defendants are hereby **REFERRED** to arbitration. Accordingly, the

matter is **STAYED AND ADMINISTRATIVELY CLOSED** until arbitration is completed.

New Orleans, Louisiana this 23rd day of February, 2024.

United States District Judge